The Mark Law Firm, LLC
675 Morris Avenue, Suite 102
Springfield, New Jersey 07081
T: 973.845.6606 (Main)
Jamison M. Mark, Esq. (042392000)
jmark@newjerseyattorneys.com

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Lynda Buvel, Joy M. Corson, Dan Kalie, Srilatha Kuntumalla, Jennifer Rina McDermott, Steven Stryker and  all similarly situated individuals, | Case No. |
| Plaintiffs, | **Complaint** |
| v. | (Request for Jury Trial) |
| Bristol Myers Squibb Co., a Delaware corporation doing business in all relevant states, | |
| Defendant. | |

Plaintiff, by and through counsel, for their alleged Complaints, allege as follows:

1. This action arises out of Defendants Bristol Myers Squibb's discrimination and retaliation against Plaintiffs due to her religious beliefs and health condition.

2. Plaintiffs hold sincerely held religious belief that the tenets of their  faith prohibit her from receiving the SARS-CoV-2 virus, (hereinafter "Covid-19") vaccination,

3. The company, BMS, recognized, for many, their sincerity of their belief when it granted Plaintiffs several days and weeks of exemption from Defendant's Corporate requirement to be vaccinated against Covid, or be terminated, and instead allowed Plaintiffs to work remotely, without incident.

4. During the period of Plaintiffs' exemption from the Corporate requirement that they be vaccinated against Covid, Plaintiffs and Defendant, as well as other Defendant's employees who were in the same or similar position as these Plaintiffs were all permitted to work from home – 100% of the time - - to protect them from the surge of Covid.

5. On or about January 2022, Defendants extended the ability of their employees who did not share in Plaintiff's religious beliefs to work from home until later in 2022, at which time those who did share in Plaintiff's religious beliefs were denied any accommodation to continue to work from home, but be terminated if the employees did not obtain the Covid-19 vaccine.

6. By terminating Plaintiffs' employment, Defendant violated Americans with Disabilities Act, Title VII of the Civil Rights Act, Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964), and the New Jersey Law Against Discrimination (N.J.S.A. § 10:5-1, et seq.) by treating Plaintiffs unlawfully – in a disparate manner -- compared to other employees who did not share such religious beliefs or have such medical conditions.

7. Moreover, in violation of the New Jersey Law Against Discrimination, Defendant retaliated against Plaintiff when it terminated her for requesting a religious accommodation.

8. As a result of Defendant's illegal discrimination and retaliation, in violation of the above Federal and State Laws, Plaintiff has lost wages and suffered emotional distress. Plaintiff seeks economic and emotional distress damages, punitive damages, pre and post judgment interest, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

9. The United States District Court has original jurisdiction over this matter pursuant to 28 U.S.C. section 1332(a)(1)("diversity jurisdiction") because there exists complete diversity between the parties, pursuant to 28 U.S.C. §§ 1331, and 1343 and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue in the United States District Court for the District of New Jersey is proper because these unlawful employment practices and injuries to Plaintiff occurred in the Lawrenceville, and/or Princeton, Mercer County, and State of New Jersey, to wit: United State District Court located in Trenton New Jersey.

## ADMINISTATIVE COMPLIANCE

11. Plaintiffs each filed with the EEOC and each received a Right to Sue notice from the EEOC which permits the filing of their Title VII and ADA claims. Plaintiffs have done so within the time provided by law. Plaintiffs received a "Right-to-Sue" letter from the EEOC and have filed this action prior to the expiration of Ninety (90) days with the United States District Court.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## PARTIES:

13. Plaintiff Lynda Buvel ('Buvel') is and was a citizen and resident of New Jersey at all relevant times. Buvel was hired by BMS and terminated on December 6, 2021 after being denied a requested accommodation and/or exception. On January 5, 2021, Buvel filed a charge with the EEOC for retaliation and religious discrimination. She received a Right to Sue on September 7, 2022.

14. Plaintiff Joy M. Corson ('Corson") is and was a citizen and resident of Pennsylvania at all relevant times. Corson was hired by BMS and terminated on December 6, 2021 after being denied a requested accommodation/exception. On October 12, 2022, Corson filed a charge with the EEOC for retaliation and religious discrimination. She received a Right to Sue on September 7, 2022.

15. Plaintiff Dan Kalie ("Kalie') is and was a citizen and resident of Pennsylvania at all relevant times. Kalie was hired by BMS and terminated on December 6, 2021, after being denied a requested accommodation/exception.  He filed a charge with the  EEOC on December 6th, 2021. He received a Right to Sue on September 1, 2022.

16. Plaintiff Srilatha Kuntumalla ("Kuntumalla") is and was a citizen and resident of New Jersey at all relevant times. Kuntumalla was hired by BMS and terminated on December 6, 2021, after being denied a requested accommodation/exception. On August 4, 2022, Kuntumalla received her Right to Sue letter from the EEOC based upon retaliation and religious discrimination.

17. Plaintiff Jennifer Rina McDermott ("McDermott") is and was a citizen and resident of New York at all relevant times. McDermott was hired by BMS and terminated on February 12, 2022 after being denied a requested accommodation/exception.  Ms. McDermott received her Right to Sue letter from the EEOC on September 30, 2022.

18. Plaintiff Steven Stryker ('Stryker") is and was a citizen and resident of New Jersey at all relevant times. Stryker was hired by BMS and terminated on December 5,2021 after being denied a requested accommodation/exception   Stryker filed a charge with the EEOC for retaliation and religious discrimination.  He received a Right to Sue on September 8, 2022.

19. Defendant Bristol Myers Squib Co. ("BMS") is a foreign corporation doing business in all states that employ said Plaintiffs. BMS is incorporated under the laws of Delaware. It maintains its corporate headquarters in New York City, New York, and has a significant present and does business throughout the State of New Jersey, with a principal headquarters in Lawrence Township New Jersey. BMS has more than 15 employees and employed all Plaintiffs at various relevant times as set forth herein.

**<u>JURISDICTION</u>**

20. BMS, at all relevant times, has continuously been an employer engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

21. Jurisdiction is appropriate in this Court pursuant 28 U.S.C. §§ 1331, 1367, and 2201. The claims arise under state law and federal law as to claims including Americans with Disabilities Act, 42 U.S.C. § 12112 et seq. and Title VII of the Civil Rights Act of 1964.

22. Venue is appropriate in the District of New Jersey based on the substantial part of the events giving rise to the claims occurred as to several Plaintiffs under 28 U.S.C. § 1391 and the substantial scope of operations and presence of BMS in New Jersey.

23. Plaintiffs bring this action and seeks injunctive and declaratory relief from a Corporate Policy that affects thousands of employees in the States of New Jersey, New York, and Pennsylvania, including Plaintiffs, and effectively nullifies Title VII and the parallel protections of the various state laws.

24. Many other employees who will be joined in this action have pending claims before the EEOC and Plaintiffs reserve the right to amend this Complaint when Right to Sue Letters are issued.

## SUMMARY OF CLAIMS

25. BMS is a drug manufacturer with locations throughout the world.

26. All Plaintiffs are former employees of BMS, and upon the date of their illegal termination, were performing their jobs satisfactorily.

27. BMS mandated an illegal requirement that all employees be vaccinated from the Covid-19 virus.

28. BMS however, publicly represented that it would allow for two exemptions from the vaccine, i.e., Medical and Religious.

29. Each of these Plaintiff's maintained a medical and religious exemption that was ignored by BMS, and in fact, BMS did not maintain a valid policy for its to exemptions from the Vaccine mandate.

30. Plaintiffs, all very high level employees with years of experience and education, became aware and expressed to BMS concerns about the general safety of the shot called a "vaccine" that had not been properly tested nor proven to be safe or effective.

31. Plaintiffs had learned and expressed to others that there had been no conclusive evidence that "vaccinated" people cannot transmit Covid.

32. For this reason, as well as their own medical and religious reasons, each Plaintiff submitted a request for an exemption from the BMS policy obligating its employees to be vaccinated or be terminated.

33. Plaintiffs, therefore, bring this action in part under Title VII of the Civil Rights Act, Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964), 42 U.S.C. § 2000e-3(a) alleging that Defendant discriminated against them and failed to accommodate their

sincerely held religious beliefs and subsequently wrongfully terminated them for failing to follow an arbitrary "vaccine requirement."

34. Plaintiffs bring this action under the Title VII and Americans with Disabilities Act, and NJ State Law for BMS's failure to accommodate a medical condition and/or religious belief that would be unlawfully requires the Plaintiffs to be vaccinated contrary to their health obligation and religious beliefs.

35. All Plaintiffs further allege breach of contract and good faith and fair dealing under state law as set forth below.

36. In early 2020, a claimed worldwide pandemic was declared over a virus that caused flu-like symptoms in some, more serious complications in others, and no effect to yet other people. The virus was called SARS-CoV-2 ("Covid").

37. In 2020, SARS-CoV-1 also led to attempts to develop a vaccine. However, numerous articles in medical journals raised concerns including one entitled "Immunization with SARS coronavirus vaccines leads to pulmonary immunopathology on challenge with the SARS virus." It concluded that "Caution in proceeding to application of SARS-CoV vaccine in humans is indicated."

38. In 2020, there was a push to obtain a "vaccine" to stop the spread of Covid. The CDC changed its definition of vaccine from "a product that stimulates a person's immune system to produce immunity to a specific disease, protecting the person from that disease" to "a preparation that is used to stimulate the body's immune response against diseases." The public health agency also changed its definition of "vaccination."

39. In 2020, different shots were developed that claimed to lessen the effects of the virus yet they were marketing to the public as vaccines. These shots never went through

formal Food and Drug Administration approval as required by law, but instead, were partially approved under an emergency order.

40. Since 2020, many studies have shown that the Covid shots had caused other medical conditions as well, thus further troubling Plaintiffs who suffer from health conditions.

41. Numerous companies closed their doors for lengthy periods of time, however, by September 2021, most businesses had reopened and many people had either had Covid, were immune from Covid or had received one or more shots.

42. Despite the downturn in Covid issues and without any medical evidence to support the Covid shots being vaccines that prevented the virus, in 2021, BMS created a Covid vaccination policy, and rolled it out on or around September 7, 2021. Prior to that date, there was no vaccination policy at BMS for any illness.

43. The policy required of its United States employees to be fully vaccinated against Covid-19 by November 1, 2021.

44. When BMS concocted its policy, no consideration was given for the change in contract terms and the Plaintiffs were told to either comply or lose their jobs.

45. Also, when BMS announced its policy, it advised employees that it would allow requests for accommodations/exemptions under the law, yet it received, and arbitrarily denied all requests from all Plaintiffs.

46. No appeal process was ever established for the aggrieved employees including the Plaintiffs, and therefore BMS' unilateral and arbitrary determination stood as judge and jury without a fair deliberative process.

47. After internal claims of discrimination were made through Defendant's "independent site,' many of the claims were denied without investigation within 24 business hours.

48. BMS required the shot as a condition of employment by embedding it in a lengthy (35 page) document. Information on submitting religious and medical exemptions was also included in this document in the Frequently Asked Questions portion (#28 & #29).

49. BMS then had an all company broadcast call to give Employees information on how "safe and effective the vaccines were." At that time they were told to submit religious and medical exemptions if needed.

50. All Plaintiffs in this Complaint were employed by BMS at the time the "vaccine policy" was implemented, and submitted for exemptions and all were denied and terminated.

51. Despite these requests, BMS terminated the employment of each and all Plaintiffs for refusing a covid vaccination shot that had only emergency approval by the government and had no long-term studies to show potential risks to the Plaintiffs.

52. BMS instituted processes to encourage employee vaccination. The Company's rollout included the threat of "for cause" involuntary termination if employees did not receive a Covid-19 vaccination.

53. As an exception to its Policy, however, BSM included a provision to accept and consider individual employees' requests for a medical or religious accommodation from its vaccination policy which was not followed.

54. Given that there have been constant changes to recommendations, claims of effectiveness, forced shutdowns proven unlawful or ineffective, questions on safety, and flip-flopping on medical claims, the forced Covid shot by BMS to those who have medical concerns or religious concerns is unconscionable given that there is nothing showing an unvaccinated person is a danger.

**Additional Facts Specific to Individuals**

55. Lynda Buvel, was productive and promoted by the company

56. Joy M. Corson, was productive and promoted by the company

57. Dan Kalie,  was productive and promoted by the company.

58. Srilatha Kuntumalla, was productive and promoted by the company

59. Jennifer Rina McDermott worked for BMS and was terminated due to the decline of her religious exemption.    No viable reason was given to her request for an exemption/accommodation despite the option to test for COVID. BMS claimed in the response letter that her termination was because there was a hardship for BMS for testing/etc., she was aware that   the company was already testing all of their vaccinated employees. She was also put on unpaid leave when other colleagues were not despite BMS' knowledge that she had preplanned paid vacation scheduled the following week.

60. Steven Stryker was productive and promoted by the company.

**Legal Claims**

**<u>COUNT ONE</u>**

**ASSAULT/BATTERY**

**18 U.S.C. § 351(e) or in the alternative State common law**

61. Plaintiffs hereby repeat and reallege each of the above-mentioned paragraphs as if fully set forth herein.

62. Under 18 U.S.C. § 351(e). an assault can also be committed "merely by putting another in apprehension of harm whether or not the actor actually intends to inflict, or is capable of inflicting that harm." *Ladner v. United States*, 358 U.S. 169, 177 (1958). Proof of this form of assault requires establishment of a reasonable apprehension of the immediate application of force to the victim.

63. If an employer receives notice from an employee that the employee's sincerely held religious beliefs, practices or observances prevent the employee from taking the COVID-19 vaccination, the employer shall provide a reasonable accommodation unless the accommodation would pose an undue hardship and more than a *de minimus* cost to the operation of the employer's business.

64. The BMS employees who declined vaccination knew it would not have been approved and marketed had it been developed by BMS. They wanted to protect the company, shareholders, general public by not being complicit in forcing dangerous vaccine mandates on all of their potential customers and patients.

65. They were doing their job a fulfilling the professional obligation to BMS and its shareholders.

66. In a commentary published in Cal Matters April 8, 2022, Dr. Eileen S. Natuzzi , a public health epidemiologist stated:

> **"…While COVID-19 vaccines do provide some protection against serious and life-threatening infections, they do not block transmission. That makes vaccination a personal health choice based upon individual risk. It does not justify mandating vaccination."**

67. Mandates for a vaccine that does not block transmission are discriminatory. They force unvaccinated individuals to comply in order to attend school or keep their job. This is discrimination by coercion: Vaccinated individuals are as likely to spread viral particles as unvaccinated people, yet their activities are not restricted. The reasoning behind these mandates is not supported by current science-based data. Effectively, if people feel ill, they should get tested and stay home.

68. Why management at BMS imposed the vaccine mandate and terminated the very people who were doing their best to protect the company and patients is incomprehensible.

69. Their motives at this point are speculative but the documents and correspondence that led them to assault their own workforce with an experimental and potentially very dangerous vaccine must be produced for the Court.

70. Forcing employees without informed consent to put a substance into their bodies is aggravated assault.

71. Denying the Company's obligation to shareholders to avoid being complicit in such assaults, risks a derivative action that could damage the stock of all shareholders. That includes employees and the pension funds they depend on for their welfare.

72. Such an arbitrary and capricious decision is reprehensible, unethical and criminal and caused damage to Plaintiffs.

## **COUNT TWO**

**(Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964) – Title XII Religious Discrimination – Failure to Accommodate)**

73. Plaintiffs hereby repeat and reallege each of the above-mentioned paragraphs as if fully set forth herein.

74. Plaintiffs falls within a protected class as they have bona fide religious beliefs that conflicts with an employer's general requirements that were adopted after the employment began.

75. Plaintiffs, through their submission of accommodation requests, informed BMS of their religious beliefs and the fact that BMS's vaccine requirement created a conflict with their religious beliefs.

76. Plaintiffs' religious belief, specifically their objection to mRNA vaccines, was not accommodated by Defendant BMS.

77. Plaintiffs were fired for a failure to take a shot which would create a conflict with their sincerely held beliefs due to the use of fetal cells in the shot.

78. Plaintiffs' request, either to work at the facility without the vaccine or continue to work remotely, could have reasonably been accommodated without any undue hardship to BMS.

79. Title VII prohibits employers from discrimination against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in McDonnell Douglas . . . ." *Redlin v. Grosse Pointe Pub. Sch. Sys*., 921 F.3d 599, 606 (6th Cir. 2019).

80. A plaintiff can establish a *prima facie* case of disparate treatment discrimination under Title VII by showing (1) he or she is a member of a protected group; (2) was subjected to an adverse employment action; (3) was qualified for the position; and (4) either similarly situated, non-protected employees were treated more favorably or was replaced by someone outside of her protected class. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010).

81. A plaintiff can establish a prima facie case of failure to accommodate under Title VII by showing: "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment

requirement." *Bolden v. Lowes Home Centers*, LLC, 783 F. App'x 589, 597 (6th Cir. 2019) *(quoting Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)).

82. BMS failed to provide Plaintiffs an accommodation causing damages to Plaintiffs due to the discrimination.

## **COUNT THREE**

**(Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964) – Title XII Religious Discrimination – Wrongful Termination)**

83. Plaintiffs hereby repeat and reallege each of the above-mentioned paragraphs as if fully set forth herein.

84. Plaintiffs fall within a protected class as they hold bona fide religious beliefs that conflict with an employer's general requirements.

85. Prior to Plaintiffs' termination, they were performing their jobs satisfactorily.

86. Plaintiffs were fired for a failure to take a shot which would create a conflict with their sincerely held beliefs due to the use of fetal cells in the shot.

87. Plaintiffs' terminations were therefore based on their sincerely held religious beliefs and BMS discriminated against their sincerely held beliefs.

88. Title VII prohibits employers from discrimination against any individual with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in McDonnell Douglas . . . ." *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019).

89. Plaintiffs were damaged due to said illegal termination.

## COUNT FOUR

### (Violation of the ADA-Discrimination/Failure to Accommodate)

90. Plaintiffs hereby repeat and reallege each of the above-mentioned paragraphs as if fully set forth herein.

91. Here, Plaintiffs were discriminated against in the workplace when their employment contract was terminated/not renewed after they raised health concerns that prevented them from safely complying with BMS' policy, issues of which BMS was aware of yet failed to accommodate.

92. The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in . . . the . . . discharge of employees." 42 U.S.C. § 12112(a).

93. Plaintiffs were "disabled" within the meaning of the ADA, they were qualified for the job and able to perform the essential functions of the job and BMS terminated their employment because of their disabilities.

94. The ADA prohibits "adverse employment decisions motivated, even in part, by animus based on plaintiff's disability or request for an accommodation—a motivating factor standard." *Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005), abrogated on other grounds by *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

95. Plaintiffs were denied an exemption or other accommodation despite their medical needs preventing them from safely getting a Covid shot.

96. Plaintiffs were damaged by the actions of BMS in violation of the law.

## COUNT FIVE

**(New Jersey Law Against Discrimination – N.J.S.A. § 10:5-1 et. seq
-Religious Discrimination – Failure to Accommodate and/or Wrongful
Termination)**

97.   Plaintiffs hereby repeat and reallege each of the above-mentioned paragraphs as if fully set forth herein.

98.   Plaintiffs fall within a protected class as they have a bona fide religious belief that conflicts with an employer's general requirements.

99.   Plaintiffs, through their submission of accommodation requests, informed BMS of their religious beliefs and the fact that BMS's vaccine requirement created a conflict with their religious beliefs.

100.   Plaintiffs' religious beliefs, specifically their objection to mRNA vaccines, were not accommodated by Defendant BMS.

101.   Plaintiffs' requests to either to work at the facility without the vaccine or continue to work remotely, could have reasonably been accommodated without any undue hardship to BMS.

102.   BMS never truly engaged with Plaintiffs in the interactive process to assess the religious exemption. The numerous questionnaires sent to employees seeking religious exemptions were clearly not in good faith, as indicated by the numerous "gotcha" questions and invasive requests such as access to employees' medical records.

103.   The NJLAD prescribed requirements that Defendant BMS was required to follow upon receipt of a request for religious exemption from the COVID-19 vaccination policy.

104. The NJLAD prohibits an employer, such as Defendant BMS, from retaliating against an employee who asserts their protected rights under the NJLAD.

105.  The NJLAD protects the rights of persons with sincerely held religious beliefs.

106. Defendant BMS wrongfully denied requests for religious exemption as supposedly not meeting the standard for exemption, in violation of the NJLAD.

107. The NJLAD prohibits BMS from retaliating against an employee who seeks a religious exemption from the COVID-19 vaccination policy.

108. "New Jersey recognizes a claim for wrongful termination of an at-will employee when the discharge is contrary to a clear mandate of public policy. Sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." *Hampton v. Armand Corp*., 364 N.J. Super. 194, 199, 834 A.2d 1077, 1080 (App. Div. 2003).

109. Upon receipt of the requests for religious exemption from all Plaintiffs, BMS wrongfully terminated Plaintiffs as employees causing damages.

### COUNT SIX

*(Declaratory Judgment Regarding Violations of Title VII Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964) and the New Jersey Law Against Discrimination (NJSA § 10:5-1, et seq.)*

110. Plaintiffs hereby repeat and reallege each of the above-mentioned paragraphs as if fully set forth herein.

111. Plaintiff seeks relief under the New Jersey Declaratory Judgment Act, N.J.S.A. 2A:16-50 et seq. and the United States Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, which allows parties to sue for a judicial declaration in order to declare and settle the rights and obligations of the parties.

112. It is respectfully demanded that this Court may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

113. There is an actual controversy within this Court's jurisdiction regarding whether BMS' policy requiring its employees to become vaccinated prior to continued employment, as being contrary to Title VII and the New Jersey Law Against Discrimination, which applies to BMS' conduct as alleged in this Complaint.

114. Plaintiff, therefore, seeks a declaratory judgment that BMS' cease all requirements of its employees requiring those who hold a sincerely religious belief to be vaccinated from the Covid-19 virus prior to returning to work, and that this Court declare that BMS' policy requiring such be held null and void, contrary to law.

115. Plaintiff seeks a declaration that BMS' "Vaccination Policy" runs contrary to and is in violation of the Federal and State Constitution, the LAD and New Jersey state public policy.

116. The NJ LAD requires employers to maintain an effective anti-discrimination policy in place that includes the employer may not discrimination against its employees based upon Religion.

117. Title VII Civil Rights Act of 1964 § 7 rrequires employers to maintain an effective anti-discrimination policy in place that includes the employer may not discrimination against its employees based upon Religion, and provides:

**(a)  Employer practices**

**It shall be an unlawful employment practice for an employer -**
**(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,**

**conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or**

**(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.**

118.  The New Jersey Law Against Discrimination provides:

**It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:**

a.    **For an employer, because of….**

**q. (1) For any employer to impose upon a person as a condition of obtaining or retaining employment, including opportunities for promotion, advancement or transfers, any terms or conditions that would require a person to violate or forego a sincerely held religious practice or religious observance,…**

119.  Under Title VII Civil Rights Act of 1964 NJ and the Law Against Discrimination, BMS "is directly and strictly liable for all equitable damages and relief to the extent any state employees, who is subjected to discrimination or sexual harassment [including but not limited to Plaintiff,] seeks equitable remedies, that is, restoration to the terms, conditions and privileges of employment the employee would have enjoyed but for the workplace discrimination or harassment.

120.  Plaintiff seeks a declaration that the BMS' Policy, and all of its proposed revisions, are ineffective as a matter of law and in violation of the Federal and State Constitution, Title VII, NJ LAD and Public Policy.

**WHEREFORE**, Plaintiff requests this Court to:

a.    Issue a Declaratory Judgment that BMS is to cease any and all operations, implement and enforce any policy that requires its Employee how hold sincerely religious beliefs to be vaccinated prior to continued employment.

b.   Enter a Declaratory Judgment that BMS has violated Federal and State law by predetermining that its Policy requiring its Employees to be vaccinated for the Covid-19 virus as null and void.

c.   Enter a Declaratory Judgment that BMS that BMS must immediately stay or restrain and preliminarily and permanently enjoin BMS from implementing and enforcing any Policy that mandates its Employees be vaccinated from the Covid-19 virus as it has violated Federal and State law.

d.   Enter a Declaratory Judgment that BMS' means and methods used to determine that an Employee does not hold s sincerely religious belief is arbitrary and capricious without merit and must be deemed null and void.

e.   Enter a Declaratory Judgment that BMS to eliminate BMS' Policy, and in its sole discretion to determine its Employees' sincerely held religious beliefs as legitimate or not, but permit the Employee and its Religious Tenants to be declared sufficient as a sincerely held religious belief.

f.   Award Plaintiff her reasonable costs, including reasonable attorney fees, incurred in this Declaratory Judgment action.

g.   Award such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs seek declaratory and injunctive relief as follows:

A.   Declaratory relief;

B.   Compensatory damages;

C.   Loss of wages, benefits, earnings and earning capacity;

D.   Emotional and mental damages;

E.   Punitive damages;

F.   Costs and attorney's fees.

G.   Such other relief as this Court deems fair and equitable.

DATED this day of October, 2022.

By: /s/ Jamison M. Mark
The Mark Law Firm, LLC
Local Counsel

By: /s/ Robert L. Mabee
Robert L. Mabee
Attorney for Plaintiffs

## **DESIGNATION OF TRIAL COUNSEL**

Trial Counsel is hereby designated as Robert Mabee, Esq.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury of all issues triable by jury.