<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LYNDA BUVEL,** *et al.*, | |
| Plaintiffs, | Civil Action No. 22-6449 (ZNQ) (JBD) |
| v. | **OPINION** |
| **BRISTOL MYERS SQUIBB CO.,** | |
| Defendant. | |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon the Motion to Partially Dismiss Plaintiff

Srilatha Kuntumalla's First Amended Complaint (the "Motion," ECF No. 25) filed by Defendant

Bristol Myers Squibb Company ("BMS" or "Defendant"). Defendant filed a brief in support of

the Motion ("Moving Br.," ECF No. 25-1). Plaintiff Srilatha Kuntumalla ("Plaintiff" or "Plaintiff

Kuntumalla") filed an opposition brief ("Opp'n Br.," ECF No. 30), to which Defendant replied

("Reply Br.," ECF No. 32). After careful consideration of the parties' submissions, the Court

decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and

Local Civil Rule 78.1.[1] For the reasons outlined below, the Court will **GRANT** Defendant's

Motion to Dismiss Plaintiff Kuntumalla's claims.

**I.       <u>BACKGROUND AND PROCEDURAL HISTORY</u>[2]**

The First Amended Complaint (the "Amended Complaint") asserts claims on behalf of

BMS employees who were terminated for refusing to be vaccinated for COVID-19. As a

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.
[2] For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

preliminary matter, the Court notes that while this Motion only addresses Plaintiff Kuntumalla's claims, the Amended Complaint (ECF No. 3) was actually filed on behalf of six named plaintiffs and "all similarly situated individuals," although no proposed class was defined. The Amended Complaint complicates the Court's review because it attempts to collectively plead certain facts with respect to all of the plaintiffs, making it difficult to consider the allegations supporting Plaintiff Kuntumalla's claims.[3]

At all times relevant to this action, Plaintiff Kuntumalla worked for BMS, a global drug manufacturer. (Am. Compl. ¶¶ 16, 25.) During her tenure with the company, Plaintiff was productive and promoted by the BMS. (*Id.* ¶ 58.) All of the named plaintiffs were "very high level employees" with years of experience and education. (*Id.* ¶ 30.)

On or about September 7, 2021, Defendant created a policy which required its U.S. employees to be fully vaccinated against COVID-19 by November 1, 2021.[4] (*Id.* ¶¶ 42–43.) Defendant told its employees to either request an exemption, comply with the requirement, or lose their jobs. (*Id.* ¶¶ 44–45, 49.) Defendant publicly represented that it would accept two types of exemption requests—medical and religious. (*Id.* ¶ 28.) However, Defendant failed to follow its exemption policy by arbitrarily denying requests that it received and failing to establish an appeal process for denied accommodations.[5] (*Id.* ¶¶ 45–46, 53.)

The named plaintiffs each requested a "medical and /or religious exemption" from the vaccine requirement. (*Id.* ¶ 29.) They expressed concern to Defendant about the general safety

---

[3] For instance, the Amended Complaint alleges that "[e]ach of these Plaintiff's [sic] maintained a medical and/or religious exemption that was ignored by BMS," leaving it unclear as to whether Plaintiff Kuntumalla sought a medical or religious exemption or both from BMS.

[4] Initially, BMS allowed its employees "several days and weeks of exemption" from the vaccination requirement, permitting them to work remotely "100% of the time" regardless of their religious beliefs. (Am. Compl. ¶¶ 3–5.) However, at some later point in time BMS suspended the work-from-home accommodations, and terminated its employees if they did not receive the COVID-19 vaccine. (*Id.* ¶ 5.)

[5] Defendant did have an independent site through which internal claims of discrimination were filed, but "many of the claims were denied without investigation within 24 business hours." (*Id.* ¶ 47.)

and efficacy of the vaccine. (*Id.* ¶ 30.) They also raised the vaccine's potential association with pulmonary immunopathology and its lack of standard approval by the Food and Drug Administration. (*Id.* ¶¶ 37, 39, 51, 54.) "Some [p]laintiffs were fired for failure to take a shot which would create a conflict with their sincerely held beliefs due to the use of fetal cells in the shot. Others were fired despite medical concerns with taking the shot." (*Id.* ¶ 77.) Plaintiffs informed BMS that their religious beliefs conflicted with the COVID-19 vaccine. (*Id.* ¶ 75.) Ultimately, BMS terminated all of the named plaintiffs for refusing to be vaccinated. (*Id.* ¶ 50.) Plaintiff Kuntumalla was terminated on December 6, 2021.[6] (*Id.* ¶¶ 16, 51.)

Plaintiff filed a charge ("Charge") for retaliation and religious discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶¶ 11, 16.) On August 4, 2022, Plaintiff received her Right to Sue letter from the EEOC. (*Id.* ¶ 16.) On November 3, 2022, Plaintiff Kuntumalla, along with the other named plaintiffs, filed this lawsuit. (ECF No. 1.) The other plaintiffs subsequently stipulated with BMS to arbitrate their claims. (*See* ECF Nos. 37, 45.) The Motion challenges Plaintiff's assault and battery claim (Count One), religious discrimination claims (Counts Two and Five, which bring failure to accommodate theories, and Counts Three and Five,[7] which bring wrongful termination theories), and claim for declaratory judgment (Count Six).

## II.   **JURISDICTION**

The Court has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

---

[6] The Amended Complaint adds that Plaintiff was performing her job satisfactorily at the time of her termination. (*Id.* ¶ 26.)
[7] The Court notes that Count Five raises religious discrimination under the New Jersey Law Against Discrimination ("NJLAD") with both failure to accommodate and wrongful termination theories. (*See id.* ¶¶ 97–109.)

3

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.   **DISCUSSION**

### A.     **Assault and Battery**

In Count One of the Amended Complaint, Plaintiff purports to assert a claim for assault and battery pursuant to "18 U.S.C. § 351(e) or in the alternative State common law." (Am. Compl. ¶¶ 61–72.) 18 U.S.C. § 351 is a criminal statute that prescribes penalties for "Congressional, Cabinet, and Supreme Court assassination, kidnapping, and assault."[8] 18 U.S.C. § 351 (2012). Plaintiff cannot bring a civil cause of action pursuant to this federal criminal statute. *See id.*; *Klein v. Met Ed*, Civ. No. 19-725, 2020 WL 94077, at *5 (M.D. Pa. Jan. 8, 2020) (a plaintiff may not use 18 U.S.C. § 351 in civil court as filing criminal charges is the "prerogative of the executive branch of government," and this statute is particularly inapplicable as it pertains to assault of federal officials).[9] Accordingly, the portion of Plaintiff's claim for assault and battery premised on the federal criminal statute is dismissed with prejudice. The Court next considers the Amended Complaint's assault and battery claim under state common law.

### 1.     **Assault**

To assert a claim for common law assault, a plaintiff must plead the following elements: (1) that someone "act[ed] intending to cause a harmful or offensive contact with the [plaintiff], or an imminent apprehension of such a contact," and (2) that the plaintiff was "thereby put in such imminent apprehension." *Ewing v. Cumberland County*, 152 F. Supp. 3d 269, 299 (D.N.J. 2015) (citing *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009)).   Imminent apprehension of contact requires one to plausibly believe that "the act is capable of *immediately*

---

[8] Subsection (e) specifically prohibits assault. *See* 18 U.S.C. § 351(e).
[9] *See also Lopez v. Compa Indus. Inc.*, Civ. No. 23-0303, 2024 WL 1112065, at *2–3 (D.N.M. Mar. 14, 2024) (18 U.S.C. § 351 does not provide a private civil cause of action), *aff'd*, Civ. No. 24-2041, 2024 WL 3518015 (10th Cir. July 24, 2024); *Graf v. U.S. Army*, Civ. No. 23-2133, 2024 WL 579086, at *2–3 (M.D. Pa. Jan. 9, 2024) (Schwab, Mag. J.) (recommending that the court dismiss the complaint under 18 U.S.C. § 351 for lack of subject matter jurisdiction, and stating that "[a] private party has no right to enforce criminal statutes").

inflicting … contact upon [the plaintiff] unless something further occurs." *Wilson*, 2023 WL 3452671, at *8 (quoting Rest. (2d) of Torts § 24) (emphasis in original) (internal quotation marks omitted).   Courts are "reluctant to protect extremely timid individuals from exaggerated fears of contact," thus requiring the apprehension to be of the sort normally "aroused in the mind of a reasonable person." *Powell v. Verizon*, Civ. No. 19-8418, 2019 WL 4597575, at *11 (D.N.J. Sept. 20, 2019) (quoting *Wigginton v. Servidio*, 734 A.2d 798, 806 (N.J. Super. Ct. App. Div. 1999)) (internal quotation marks omitted); *Wierzbicki v. City of Jersey City*, Civ. No. 19-17721, 2021 WL 4148105, at *9 (D.N.J. Sept. 10, 2021).

The first prong for assault requires intent to cause such imminent apprehension of contact. *Leang*, 969 A.2d at 1117.   In *Wigginton*, the court acknowledged that angrily or rudely threatening someone, so as to put them in fear of bodily harm, could constitute assault. *See* 734 A.2d at 805. However, proposed interactions for a future time, even if inappropriate, are insufficient to establish the intent requirement without indication that the person intended to touch the plaintiff before that future point in time. *See Stengart v. Loving Care Agency, Inc.*, Civ. No. BER-L-858-08, 2010 WL 5180343 (N.J. Super. Ct., Law Div. Nov. 4, 2010) (unpaginated decision addressing defendants' motions for summary judgment).

Here, Plaintiff does not allege that Defendant administers the vaccine to its employees, just that it imposed a vaccine mandate.  (Am. Compl. ¶ 42.)  Thus, the Court interprets Defendant's intent as being only for its employees, if anything, to cause themselves to receive the COVID-19 vaccination in the future; even if BMS indicated that it as an institution would administer the vaccines, there is no allegation that BMS indicated to its employees that it is "capable of *immediately* inflicting" such contact upon them, nor would a reasonable person fear it could. *See*

6

*Wilson*, 2023 WL 3452671, at \*8 (emphasis in original); (*see generally* Am. Compl.)  The first element thus necessarily fails here.

Even if the Amended Complaint could somehow be construed as sufficiently stating intent, the Court must dismiss Count One because it also does not sufficiently state the second element of assault.  As explained, imminent apprehension of harmful or offensive contact requires some immediacy of the potential contact.  *See Wilson*, 2023 WL 3452671, at \*8.  Here, the Court finds that, as pled, Defendant's actions could not have plausibly placed Plaintiff in imminent apprehension of any contact.  Defendant instituted its vaccine mandate on September 7, 2021, which required employees without an exemption to be vaccinated by November 1, 2021.  (Am. Compl. ¶¶ 43–44.)  Thus, there was nearly two months of time between Plaintiff's knowledge of the vaccine requirement and the date by which she needed to be vaccinated; this does not present the proper imminency of contact to sustain an assault claim.  *See Wilson*, 2023 WL 3452671, at \*8.  Moreover, again, BMS did not take any physical action, nor indicate that it was going to itself enforce the vaccination requirement in the near future by forcibly giving vaccines to its employees; rather, the employees had that choice to make for themselves.  (*Id.* ¶¶ 44–45, 49); *see Wierzbicki*, 2021 WL 4148105, at \*9; *Wigginton*, 734 A.2d at 805.

Other courts have rejected employees' attempts to assert a claim for common law assault when they were terminated for refusing to be vaccinated.  *See, e.g., McEntee v. Beth Israel Lahey Health, Inc.*, 685 F. Supp. 3d 43 (D. Mass 2023); *Reed v. Tyson Foods, Inc.*, Civ. No. 21-01155, 2022 WL 2134410, at \*14 (W.D. Tenn. June 14, 2022) (dismissing assault claim where plaintiff employees were "free to accept or refuse the COVID-19 vaccine ... [and] pursue employment elsewhere").

For these reasons, the Court will dismiss Plaintiff's assault claim without prejudice.

### 2.   Battery

Count One also attempts to state a claim for battery. A common law claim for battery requires one to intentionally cause harmful or offensive contact with one's person without their consent. *See Bullock v. Cabasa*, Civ. No. 10-1412, 2014 WL 5286613, at *10 (D.N.J. Oct. 15, 2014); *Leang*, 969 A.2d at 1117 ("[t]he tort of battery rests upon a nonconsensual touching"); *Kelly v. County of Monmouth*, 883 A.2d 411, 415 (N.J. Super. Ct. App. Div. 2005). Thus, a critical element of a battery claim is actual physical contact. *See Bullock*, 2014 WL 5286613, at *11; *Kelly*, 883 A.2d at 415.

Here, as a procedural matter, the Court first finds that Plaintiff has waived any argument regarding the sufficiency of her battery allegations by apprising the Court of it only "in passing" with a footnote. (*See* Opp'n Br. at 10 n.1); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."). On the merits, even if the Court were to consider Plaintiff's argument, because the Amended Complaint does not allege that there was any physical contact by BMS, this claim necessarily fails. *See Bullock*, 2014 WL 5286613, at *11. Plaintiff herself acknowledges that "[b]attery may not apply if there was no physical touching." (Opp'n Br. at 10 n.1.)

The Court will therefore dismiss Count One of the Amended Complaint without prejudice.

## B.    Religious Discrimination

Plaintiff brings the same theories of religious discrimination—failure to accommodate and wrongful termination[10]—under both Title VII and NJLAD.[11]  Although each statute has its own requirements, the elements to plead their *prima facie* cases are the same.  *Schurr v. Resorts Intern. Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999).  Therefore, the Court will analyze Plaintiff's Title VII and NJLAD claims concurrently.  *Desyatnik v. Atl. Casting & Eng'g Corp.*, Civ. No. 03-5441, 2005 WL 3216533, at *3 (D.N.J. Nov. 29, 2005).

### 1.    Failure to Accommodate (Counts Two and Five)

Counts Two and Five assert claims for failure to accommodate—under Title VII and NJLAD, respectively—regarding Plaintiff's request for a religious exemption from Defendant's mandatory vaccination policy, which was ultimately denied.  (Am. Compl. ¶¶ 16, 75–78, 99–102.) Defendant argues that Plaintiff fails to state a claim because she does not allege that she is religious nor that she applied for a religious exemption from the vaccination policy.[12]  (Moving Br. at 1, 4–5.)

A plaintiff must plead the following elements to state a claim for religious discrimination based on a failure to accommodate: "(1) she has a sincere religious belief that conflicts with a job

---

[10] The Court notes that it is unclear whether the Amended Complaint is asserting a cause of action for retaliation, and that the parties do not address retaliation in their briefs.  (*See generally* Am. Compl. ¶¶ 61–120 (asserting no definitive cause of action for retaliation); Moving Br. (no discussion of retaliation); Opp'n Br. at 6 (omitting retaliation from Plaintiff's own list of her causes of action); Reply Br. *But see* Am. Compl. ¶¶ 1, 7–8, 104, 107.)  Regardless, given that the Amended Complaint contains references to retaliation in passing which may overlap with Plaintiff's more definitively stated claims of religious discrimination, the Court will allow Plaintiff to more clearly assert any cause of action for retaliation upon amendment of the complaint. *See infra* (granting leave to amend for additional reasons).

[11] Plaintiff erroneously asserts her Civil Rights Act claims under "Title XII"; but as Defendant points out, there is no such title under the Act.  (*See* Am. Compl. ¶¶ 83–89; Moving Br. at 1 n.1.)  Accordingly, the Court construes Plaintiff's discrimination claims under the Act as being brought pursuant to Title VII.

[12] Defendant goes so far as to argue that Plaintiff in fact submitted a request for a disability accommodation rather than a religious one.  (Moving Br. at 2–3.)  However, the Court will only analyze what is inside the four corners of the complaint at the motion to dismiss stage.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.") (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985)).

requirement; (2) she told the employer about the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement." *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 316, 319 (3d Cir. 2008) (conveying the standard for bringing a *prima facie* case for failure to accommodate under Title VII); *see also Aliano v. Twp. of Maplewood*, Civ. No. 22-5598, 2023 WL 4398493, at *3 (D.N.J. July 7, 2023) (denoting the same standard for a *prima facie* case under both Title VII and NJLAD).  Here, the Court finds that Plaintiff adequately pleads the second and third elements, as she alleges that she was terminated after bringing religious concerns to BMS's attention and requesting an "accommodation/exception" to the COVID-19 vaccination requirement.  (Am. Compl. ¶¶ 16, 75–76.)

However, the Court finds that while Plaintiff baldly alleges a "bona fide religious belief," she fails to adequately plead the required underlying facts demonstrating that she has a sincere religious belief.  Merely holding a sincere opposition to vaccination is not sufficient to satisfy this first element; rather, a plaintiff's allegedly religious beliefs must "occupy a place in [her] life similar to that occupied by a more traditional faith." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017); *Brown v. Children's Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020).  The Third Circuit relies on three factors to assist with this inquiry: whether the plaintiff's beliefs "address[ ] fundamental and ultimate questions having to do with deep and imponderable matters," are "comprehensive in nature," and are accompanied by "certain formal and external signs." *Id.* at 491 (quoting and applying *Africa v. Commonwealth of Pa.*, 662 F.2d 1025 (3d Cir. 1981), to a Title VII case) (internal quotation marks omitted).

Applying the *Africa* factors, courts have held that medical and scientific concerns about a vaccine, without more, are not enough to qualify as religious beliefs for purposes of Title VII and NJLAD protection. *Fallon*, 877 F.3d at 492 (worries about the health effects of a vaccine and

10

general disbelief of scientific opinions about the vaccine's safety do not qualify as religious beliefs); *Winans v. Cox Auto., Inc.*, 669 F. Supp. 3d 394, 401 (concerns based on the plaintiff's "belief that the vaccine is ineffective and his concern with its potential side effects" are medical rather than religious, and therefore do not qualify for protection); *Aliano*, 2023 WL 4398493, at *11 (objection to the usage of fetal cells in a vaccine, without more, does not qualify for protection).   Here, Plaintiff's allegations fail to include any of the details contemplated by the *Africa* factors—there is no mention in the Amended Complaint of fundamental and ultimate questions, a comprehensive belief system, or formal and external signs of her purported religion. (*See generally* Am. Compl.)[13]   Rather, Plaintiff cites the types of concerns about the COVID-19 vaccine that are precisely the type of medical and scientific concerns that do not meet the standard required for protection under Title VII and NJLAD. (*See id.* ¶¶ 30, 39–40, 51, 54, 76–77, 86); *Brown*, 794 F. App'x at 227; *Fallon*, 877 F.3d at 492; *Winans*, 669 F. Supp. 3d at 401; *Aliano*, 2023 WL 4398493, at *11.

In sum, because Plaintiff does not allege sufficient information other than her general opposition to COVID-19 vaccination to adequately plead a sincere religious belief—and primarily alleges facts regarding medical concerns—the Court must dismiss her failure to accommodate claims. *See Fallon*, 877 F.3d at 492; *Brown*, 94 F. App'x at 227.   The Court will therefore dismiss Counts Two and Five without prejudice.

---

[13] Examples of fundamental and ultimate questions include those about life and death, right and wrong, and others of that nature—all of which are absent from the Amended Complaint. *Africa*, 662 F.2d at 1033; (*see also generally* Am. Compl.)  Moreover, the "comprehensive in nature" factor requires more than just one idea or slew of unconnected ideas, which Plaintiff also fails to plead. *Africa*, 662 F.2d at 1035; *Fallon v. Mercy Cath. Med. Ctr. Of Se. Pa.*, 877 F.3d 487 (3d Cir. 2017) (a singular moral commandment that "one should not harm their own body" is not enough); (*see also generally* Am. Compl.)  Finally, examples of formal and external signs—notably absent from Plaintiff's allegations—include formal services, ceremonies, structure, and the observance of holidays. *Africa*, 662 F.2d at 1035. (citing the concurrence in *Malnak v. Yogi*, 592 F.2d 197, 209 (3d Cir. 1979)).

### 2. Wrongful Termination (Counts Three and Five)

Counts Three and Five assert claims for wrongful termination—under Title VII and NJLAD, respectively—regarding Plaintiff's termination after being denied an exemption from the vaccine requirement. (Am. Compl. ¶¶ 84–87, 98, 109.) Defendant argues that "the FAC does not contain any facts that would permit a factfinder to conclude that BMS . . . terminated her employment because of her religion." (Moving Br. at 4.)

A plaintiff must plead the following elements to state a claim for wrongful termination based on religious discrimination: that she (1) was a member of a protected class, (2) was qualified for the position at issue, (3) suffered an adverse employment action, and (4) was "ultimately replaced under circumstances that support an inference of unlawful discrimination." *See In re Tribune Media Co.*, 902 F.3d 384, 402 (3d Cir. 2018); *see also Desyatnik*, 2005 WL 3216533, at *4 (conveying that the NJLAD standard for showing of a *prima facie* case is the same as under Title VII). Here, the Amended Complaint states that Plaintiff was productive and promoted by Defendant prior to her termination on December 6, 2021. (Am. Compl. ¶¶ 16, 58.) The Amended Complaint also states that Plaintiff was a "very high level employee[] with years of experience and education." (*Id.* ¶ 30.) As a result, Plaintiff sufficiently pleads both the second and third elements. *See Carthan v. All., Div. of Rock-Tenn Co.*, Civ. No. 05-4470, 2007 WL 316464, at *3 (D.N.J. Jan. 29, 2007) (discussing objective qualifications); *see also In re Tribune Media Co.*, 902 F.3d at 402 (showing how years of experience can meet the requirement of being qualified for the position). However, regarding the fourth element, the Amended Complaint contains no allegations to suggest that Plaintiff was replaced "under circumstances that support an inference of unlawful discrimination." *In re Tribune Media Co.*, 902 F.3d at 402; *see also Desyatnik*, 2005 WL 3216533, at *4 (an employer continuing to seek out individuals with similar qualifications to the terminated

plaintiff supports an inference of unlawful discrimination).  There is simply no mention of a replacement at all, or of any discriminatory intentions behind her termination, and so this element is not sufficiently pled.  (*See generally* Am. Compl.)[14]  To the contrary, Plaintiff's allegations simply state that she was terminated because of her failure to comply with the vaccination policy. (*Id.* ¶¶ 16, 51.)

For the foregoing reasons, the Court finds that Plaintiff does not sufficiently plead wrongful termination based on religious discrimination.  The Court will therefore dismiss Counts Three and Five without prejudice.

### C.    Declaratory Judgment

Finally, for the same reasons set forth above with respect to Plaintiff's Title VII and NJLAD claims, the Court further finds that the Amended Complaint fails to plead a plausible claim for declaratory judgment.[15]  Accordingly, Count Six will be dismissed without prejudice.

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant's Motion to Dismiss; Counts One, Two, Three, Five, and Six will be **DISMISSED** without prejudice.  Plaintiff will be given an opportunity to file an amended complaint to address the defects identified in this Opinion within 30 days.  An appropriate Order will follow.

Date: August 15, 2024

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE

---

[14] Because this element is not met, the Court will not assess whether Plaintiff belongs to a protected class.

[15] The Court notes that Plaintiff entirely fails to respond to the portion of the Motion that challenges her declaratory judgment claim, Count Six.  (*See* Moving Br. at 7; *see also generally* Opp'n Br.)  Because her opposition did contest Defendant's challenges to her Title VII and NJLAD claims, the Court is willing to infer that she did not intend to waive her declaratory judgment claim.  Plaintiff's counsel is cautioned that failure to respond completely to the substance of any further motions filed by Defendant may be construed as a waiver.