<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **SRILATHA KUNTUMALLA**, | |
| Plaintiff, | Civil Action No. 22-6449 (ZNQ) (JBD) |
| v. | **OPINION** |
| **BRISTOL MYERS SQUIBB CO.**, | |
| Defendant. | |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss Plaintiff Srilatha Kuntumalla's First Amended Complaint (the "Motion," ECF No. 103) filed by Defendant Bristol Myers Squibb Company ("BMS" or "Defendant"). Defendant filed a brief in support of the Motion ("Moving Br.," ECF No. 103-1.) Plaintiff Srilatha Kuntumalla, ("Plaintiff" or "Kuntumalla") filed a Cross-Motion to Amend the Complaint ("Cross Motion," ECF No. 106) and a brief in support ("Cross-Motion Br.," ECF No. 106-1). Both parties submitted opposition briefs. (ECF Nos. 107 ("Defendant's Reply Br."), 108 ("Plaintiff's Reply Br.").) Additionally, BMS filed a Motion for Sanctions and a brief in support. (ECF Nos. 109, 109-1.) Kuntumalla filed a brief in opposition to the Motion for Sanctions (ECF No. 112), to which BMS replied (ECF No. 116).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1]

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

1

For the reasons set forth below, the Court will **GRANT** Defendant's Motion to Dismiss Plaintiff Kuntumalla's claims and **DENY** Plaintiff's Cross-Motion to Amend.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A.    BACKGROUND

Plaintiff worked for BMS, a global drug manufacturer.  (ECF No. 3 ("FAC") ¶¶ 16, 25.) During her tenure with the company, Plaintiff was productive and promoted by BMS.  (*Id.* ¶ 58.)

In September 2021, Defendant implemented a policy which required its U.S. employees to be fully vaccinated against COVID-19 by November 1, 2021.[2]  (*Id.* ¶¶ 42–43.)  Defendant told its employees to either request an exemption, comply with the requirement, or lose their jobs.  (*Id.* ¶¶ 44–45, 49.)  Defendant publicly represented that it would accept two types of exemption requests: medical and religious.  (*Id.* ¶ 28.)  However, Plaintiff alleges Defendant failed to follow its exemption policy by arbitrarily denying requests that it received and did not establish an appeal process for denied accommodations.[3]  (*Id.* ¶¶ 45–46, 53.)

Kuntumalla submitted a request for an exemption from the vaccination policy, but her request was denied.  (*Id.* ¶ 16.)  Kuntumalla's employment with BMS was terminated on December 6, 2021.  (*Id.*)

### B.    PROCEDURAL HISTORY

Plaintiff filed a charge for retaliation and religious discrimination with the Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶¶ 11, 16.)  On August 4, 2022, Plaintiff received an email from the EEOC with a link to access her Right to Sue letter.  (*Id.* ¶ 16.)

---

[2] Initially, BMS allowed its employees "several days and weeks of exemption" from the vaccination requirement, permitting them to work remotely "100% of the time" regardless of their religious beliefs.  (FAC ¶¶ 3–5.)  However, at some point thereafter, BMS suspended the remote work accommodations and terminated employees who failed to receive the COVID-19 vaccine.  (*Id.* ¶ 5.)

[3] Defendant maintained an independent site through which internal claims of discrimination were filed, but "many of the claims were denied without investigation within 24 business hours."  (*Id.* ¶ 47.)

On November 3, 2022, Kuntumalla[4] filed this lawsuit.  (*See* ECF No. 1.)  Thereafter, on March 27, 2023, BMS moved to dismiss Counts One, Two, Three, Five, and Six of the Complaint (*see* ECF No. 25), which the Court granted on August 15, 2024 (ECF No. 47).  In the August 15, 2024 Order, this Court ordered Kuntumalla to file an amended complaint by September 14, 2024. (*Id.*)  Kuntumalla did not do so.

On September 11, 2024, BMS filed a pre-motion letter seeking permission to move to dismiss Kuntumalla's remaining Americans with Disabilities Act ("ADA") claim.  (*See* ECF No. 49.)  On September 16, 2024, Kuntumalla requested an extension to respond to BMS's pre-motion letter (ECF No. 50), which this Court granted in part, ordering Kuntumalla to respond no later than October 1, 2024 (ECF No. 51).  Again, Kuntumalla missed this deadline.  The Court thereafter granted Kuntumalla an additional extension to October 18, 2024.  (*See* ECF No. 56.)  On October 22, 2024, this Court issued an Order waiving the pre-motion conference and instructing BMS to file its Motion to Dismiss by November 7, 2024.  (*See* ECF No. 58.)

BMS then filed its Motion to Dismiss on November 7, 2024.  (ECF No. 60.)  The Court extended Kuntumalla's deadline to file an opposition to BMS's motion so that she could secure new local counsel.  (*See* ECF No. 66.)  John Coyle, Esq.[5] entered his appearance as local counsel on December 31, 2024.  (*See* ECF No. 71.)  On February 3, 2025, Kuntumalla filed an opposition to BMS's Motion to Dismiss and a Cross-Motion to Further Amend the Complaint.  (*See* ECF Nos. 78, 78-2.)  In her motion papers, Kuntumalla asserted that she "erroneously alleg[ed]" in the FAC and the original Complaint that she received her Notice of Right to Sue ("NRTS") from the EEOC on August 4, 2022.  (*See id.*)

---

[4] Several other plaintiffs were also listed on the initial Complaint, but those plaintiffs subsequently stipulated with BMS to arbitrate their claims.  (*See* ECF Nos. 37, 45.)
[5] John Coyle is now Kuntumalla's lead counsel.

3

On March 4, 2025, BMS filed an opposition to Kuntumalla's Cross-Motion, attaching an email in which the EEOC had confirmed that it sent Kuntumalla her NRTS on August 4, 2022, and that the NRTS was downloaded that same day. (*See* ECF No. 81-2.) In response, Kuntumalla filed a reply brief in which she argued that the Court should disregard this email, alleging that it amounted to inadmissible hearsay. (*See* ECF No. 86.) In her reply brief, Kuntumalla admitted that she may have been "incorrect and by complete happenstance, [happened to] coincidentally log[] onto the EEOC docket to download the Notice at the exact moment it was digitally signed by the EEOC. Or not." (*See id.*)

On May 20, 2025, Kuntumalla's former attorney, Robert Mabee, Esq., died. (*See* ECF No. 106-1 at 4.) On June 19, 2025, Kuntumalla filed a Motion for Leave to Further Amend the complaint, seeking to add nine additional plaintiffs that her prior counsel, Robert Mabee, Esq., represented before his death. (*See* ECF No. 96.)

In light of Mr. Mabee's passing and the overlapping nature of the parties' motions, the Court administratively terminated BMS's Motion to Dismiss and Kuntumalla's Cross-Motion to Amend, without prejudice to the parties' rights to renew the motions. (*See* ECF No. 97.) The Court then granted the parties' request for an amended briefing schedule to renew the two motions. (ECF No. 102.)

## II.    SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. §§ 1331.

4

### III.    LEGAL STANDARD

#### A.    RULE 12(b)(6)

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544. 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

#### B.    MOTION TO AMEND

"The threshold issue in resolving a motion to amend is determining whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." *Wright v. Cnty. of Camden*, Civ. No. 21-133158, 2022 WL 3536013, at *3 (D.N.J. Aug. 18, 2022). When a party

5

moves to amend a pleading "after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) . . . applies," and a "party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard." *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020); see *WAG Acquisition, LLC v. Gattyan Grp. S.A.R.L.*, Civ. No. 14-2832, 2020 WL 5105194, at \*2 (D.N.J. Aug. 31, 2020) (holding same); *Adams v. Republic Servs., Inc.*, Civ. No. 12-267, 2014 WL 12610152, at \*2 (D.N.J. Sept. 16, 2014) (holding same).

Once a scheduling order has been entered, it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Whether "good cause" exists depends on the moving party's diligence. *UPMC*, 970 F.3d at 319. Good cause requires that the moving party demonstrate that the deadlines set forth in a scheduling order cannot reasonably be met despite the diligence of the party seeking the extension. *See Carroll v. Del. Port Auth.*, Civ. No. 13-2833, 2015 WL 12819181, at \*3 (D.N.J. Mar. 31, 2015).

If a moving party meets its burden under Rule 16, the Court must then assess the application under Rule 15. "[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*; *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 202 (3d Cir. 2006) (citation omitted) ("Federal Rule of Civil Procedure 15 embodies a liberal approach to pleading."). "This standard encompasses a broad range of equitable factors, including a party's delay in seeking leave to amend and any prejudice to the opposing party." *Arthur*, 434 F.3d at 203 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Id.* at 204 (citing *Foman*, 371 U.S. at 182). The Supreme Court has stated:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182.

"In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). "Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Great W. Mining & Min. Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (citing *In re Merck & Co. Sec., Derivative, & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007). "The standard for assessing futility is the 'same standard of legal sufficiency as applies under [Rule] 12(b)(6),'" meaning that all pleaded allegations are taken as true and viewed in a light most favorable to plaintiff. *Id.* (citing *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *Winer Family Trust v. Queen*, 503 F.3d 319, 330–31 (3d Cir. 2007)). "[D]elay alone does not justify denying a motion to amend." *Allegheny Plant Servs., Inc. v. Carolina Cas. Ins. Co.*, Civ. No. 14-4265, 2017 WL 772905, at *4 (D.N.J. Feb. 27, 2017). "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Phillips v. Borough of Keyport*, 179 F.R.D. 140, 144 (D.N.J. 1998) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) (alteration in original)). The Third Circuit has contemplated that the standard for denial of amendment is high, stating "[g]enerally, Rule 15 motions should be granted." *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016).

7

## IV.    DISCUSSION

### A.    MOTION TO DISMISS

The only claim that remains in this matter is Kuntumalla's ADA claim ("Count Four"). Defendant argues that Count Four is time-barred because Kuntumalla did not file her original Complaint within ninety days of receiving her NRTS from the EEOC.  (Moving Br. at 1.) Kuntumalla argues that her statements indicating she received her NRTS on August 4, 2022, were "erroneous" and that she "has attempted to correct the erroneous allegation . . . not once, but twice." (Cross-Motion Br. at 9.)  Kuntumalla also asserts that BMS asks this Court to look beyond the pleadings by asking it to consider EEOC logs.  (*Id.*)

Before a plaintiff may file a Title VII suit under the Civil Rights Act of 1964, she must exhaust her administrative remedies by filing a charge of discrimination with the EEOC.  42 U.S.C. § 2000e-5(e)(1); *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 595 (1981).  If the EEOC decides it will not pursue a plaintiff's charge, it "shall . . . notify" the plaintiff.  42 U.S.C. § 2000e-5(f)(1).  Then, any civil action must be brought within ninety days following Plaintiff's receipt of a right-to-sue letter from the EEOC.  *See id.* ("[W]ithin ninety days after the giving of such notice a civil action may be brought against the respondent named in the [EEOC] charge . . . by the person claiming to be aggrieved . . . by the alleged unlawful employment practice.").

"While the 90-day rule is not a jurisdictional predicate . . . the court cannot extend the limitations period by even one day" absent reasons to equitably toll the ninety-day period.  *Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986).  "Equitable tolling to extend the ninety-day right-to-sue window should only be applied 'sparingly,' usually where 'the defendant has actively misled the plaintiff; when the plaintiff in some extraordinary way was prevented from asserting [his] rights; or when the plaintiff timely asserted [his] rights in the wrong forum.'"

*Marable v. Oaks Integrated Care, Inc.*, Civ. No. 22-6168, 2024 WL 1406648, at *5 (D.N.J. Apr. 2, 2024) (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). A plaintiff bears the burden of proving that equitable tolling applies. *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir. 2005), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018)).

In the Complaint and the FAC, Kuntumalla states that "[o]n August 4, 2022, [she] received her Right to Sue letter from the EEOC[.]" (FAC ¶ 16.) Ninety days from August 4, 2022, is November 2, 2022—one day before Kuntumalla filed her Complaint. (*See* ECF No. 1.)

Kuntumalla argues that there is no indication that she actually received notice of her right to sue on August 4, 2022. (*See generally* Cross-Motion Br. at 9–13.) Instead, Kuntumalla points to the text of the August 4, 2022 email, which states that "[a] new document was added to EEOC Charge No. 524-2022-01035, Srilatha Kuntumalla v. Bristol Myers Squibb. To view it, sign-in to the EEOC Public Portal." (*See* ECF No. 103-2 at 752.) Although the phrase "EEOC Public Portal" is hyperlinked, the email does not include any text that would indicate that the referenced document added to the EEOC Public Portal was Kuntumalla's NRTS. (*See id.*; *see also* Cross-Motion at 10.)

Here, the so-called 90-day clock's start date is not straightforward. There is no physical, mailed right-to-sue letter. Instead, the Court is presented with an EEOC communication sent via email. Thus, this Court must first determine whether this communication suffices to start the 90-day clock.

The Third Circuit has held that an EEOC communication will start the clock only if it is "equivalent" to a right-to-sue letter. *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 116 (3d Cir. 2003) (holding that equivalent oral notice can start the clock). In order for a communication to be

9

equivalent to a right-to-sue letter, it must be "as comprehensive" as the letter and "include[ ] an explanation of the start date" for the 90-day clock. *Id.* (cleaned up).

The August 4, 2022 email alone is not equivalent to a right-to-sue letter. On its face, it includes no language referring to the 90-day clock, nor does it in any way inform the recipient that the 90-day clock would begin to run from the date of receipt of the email. *See Hayes v. New Jersey Department of Human Services*, 108 F.4th 219, 222 n.4 (3rd Cir. 2024) (holding that the "equivalent-notice requirement aligns with the EEOC's implementing regulations, which provide that the agency's 'determination shall inform the person claiming to be aggrieved . . . of the right to sue in Federal district court within 90 days of receipt of the determination.'").

The email, however, included a link to Plaintiff's EEOC Public Portal. When the link is clicked, Kuntumalla's NRTS is shown.

Plaintiff argues that the notice in this case is similar to that in *Hayes*. In *Hayes*, the plaintiff's lawyer received an email from the EEOC on March 11. *Id.* at 222. The email stated that the EEOC's "[r]eview of the available evidence does not establish a violation of [Title VII]." (*Id.*) The email explained that the EEOC "*will* issue . . . a Dismissal and Notice of Rights, which *will* enable you to file suit in U.S. District Court *within 90 days of your receipt of that Notice* if you wish to pursue this matter further." *Id.* (emphasis added). The Third Circuit held that this email was deficient because "it never said that the 90-day clock had started. Instead, it said that a right-to-sue letter was forthcoming, and that the limitations period would commence when the letter was subsequently sent." *Id.* at 223.

The same day that the EEOC investigator emailed the plaintiff's lawyer in *Hayes*, the EEOC uploaded the right-to-sue letter to the online portal. *Id.* The Third Circuit noted that "where the upload was not accompanied by a direct communication to the plaintiff or her lawyer[,]" the

10

upload action alone was insufficient to start the 90-day clock. *Id.* The Third Circuit declined to specify a "specific form" the notice must take[ ] but noted that "some affirmative act of communication from the EEOC to the plaintiff or her lawyer" is required. *Id.* (citing *Seitzinger*, 165 F.3d at 239 (letter); *Ebbert*, 319 F.3d at 116 (phone call)).

Here, Kuntumalla received an email communication from the EEOC informing her that a document had been added to her portal. That communication included a link that would bring her to the right-to-sue letter. This differentiates the communication from the email in *Hayes*. In *Hayes*, the EEOC indicated it would issue a right-to-sue letter at some point after the email was sent. Here, unlike in *Hayes*, the link to the right-to-sue letter was present in the EEOC's email communication to Kuntumalla on August 4, 2022. The EEOC's email in this case therefore satisfied the requirements under *Hayes* and began Kuntumalla's 90-day clock. Insofar as Kuntumalla did not file her Complaint in this matter until 91 days later, her Complaint was untimely under the statute. The burden therefore shifts to her to prove that equitable tolling applies to her case.

Kuntumalla argues at length, with a supporting declaration, that she did not actually read the EEOC's email until after August 4, 2022. Unfortunately for her argument, at least three courts in this Circuit have found that a plaintiff's failure to timely read her email does not warrant equitable tolling. *See Moses v. Home Depot Inc.*, Civ. No. 16-2400, 2017 WL 2784710, at *7 (D.N.J. June 27, 2017) ("delay solely caused by the inability to read an e-mail message is not an extraordinary circumstance that justifies equitable tolling") (citations omitted); *Paniconi v. Abington Hosp.-Jefferson Health*, 604 F. Supp. 3d 290, 293 (E.D. Pa. 2022) ("[I]t is irrelevant when Plaintiff's counsel actually followed the link to access the EEOC portal. The ninety-day period began to run when the email notification reached Plaintiff's attorney's inbox."); *Marable*

11

*v. Oaks Integrated Care, Inc.*, Civ. No. 22-6168, 2024 WL 1406648, at *6 (D.N.J. Apr. 2, 2024) (plaintiff's failure to timely read email was "an unfortunate, albeit self-inflicted, wound that cannot justify equitable tolling.") (citation omitted).[6]

The undersigned is mindful of the harshness of this outcome.  Nonetheless, a civil rights complaint filed even a day outside the 90-day window must be dismissed absent a sufficient basis to equitably toll the deadline.  Here, Plaintiff fails to meet that burden.  As such, Count Four of the Complaint will be **DISMISSED WITH PREJUDICE**.[7]

## B.    CROSS-MOTION TO AMEND

As set forth above, in response to Defendant's Motion to Dismiss Plaintiff filed a Cross-Motion to Amend the Complaint.  (*See* ECF No. 106.)  Citing "a series of unfortunate, and occasionally inexplicable, events," Plaintiff asserts that leave to amend is warranted.  (Cross-Motion Br., at 2.)  Defendant opposes the Cross-Motion, reasoning that the "request is unreasonably delayed, without good cause, and the amendment would be futile."  (Defendant's Response Br., at 9.)

A brief discussion of the relevant procedural history is warranted here.  On March 27, 2023, BMS moved to dismiss Counts One, Two, Three, Five, and Six of Kuntumalla's Complaint.  (ECF No. 25.)  This Court granted BMS's motion on August 15, 2024.  (ECF No. 47.)  In its decision,

---

[6] Plaintiff argues that she did not look at her NRTS until August 12, 2022. (*See* ECF No. 78-5, at 380–81.) Attached to its Motion, Defendant includes the EEOC Charge Activity Report. (ECF No. 103-2 Ex. A.) Interestingly, the EEOC Charge Activity Report purports to indicate that a party downloaded the NRTS on August 4, 2022. (*Id.* at 3) (indicating that "[t]he Charging Party has Downloaded Document.  Type: Closure Notice/NRTS, FileName:20220804NRTSS.Kuntumalla.pdf".)  It should be noted that Kuntumalla acknowledges that she was unrepresented by counsel on August 4, 2022, and she does not allege that anyone other than her had access to her NRTS in the EEOC portal. (ECF No. 106-1.)  However, this court need not consider the EEOC Charge Activity Report, because the date Kuntumalla actually downloaded the NRTS is irrelevant as to the 90-day clock's start.  The date Kuntumalla received the link to access the NRTS from the EEOC governs the Court's evaluation. *See Marable v. Oaks Integrated Care, Inc.*, Civ. No. 22-6168, 2024 WL 1406648, at *6 (D.N.J. Apr. 2, 2024) ("'[A] delay solely caused by the inability to read an e-mail message is not an extraordinary circumstance that justifies equitable tolling.'") (quoting *Moses*, 2017 WL 2784710, at *7).

[7] Permitting Plaintiff the opportunity to amend Count Four of the Complaint would be both inequitable and futile.  As described, Plaintiff filed her suit outside the 90-day right-to-sue period.

12

this Court ordered Plaintiff to file an amended complaint by September 14, 2024. (*Id.*) Kuntumalla did not meet that deadline.

On September 11, 2024, BMS filed a pre-motion letter requesting permission to move to dismiss Kuntumalla's remaining ADA claim (Count Four). (*See* ECF No. 49.) In a letter dated September 16, 2024, Kuntumalla requested an extension to respond to BMS's pre-motion letter. (ECF No. 50.) This Court granted that request in part, ordering Kuntumalla to file a response no later than October 1, 2024. (ECF No. 51.) Again, Kuntumalla missed this deadline. This Court, however, granted Kuntumalla an additional extension to October 18, 2024. (See Docket No. 56.)

BMS then filed its Motion to Dismiss on November 7, 2024. (*See* ECF No. 60.) At this point, Kuntumalla's prior local counsel had withdrawn from the case, so the Court extended her deadline to file an opposition to BMS's motion in order for her to retain new local counsel. (*See* ECF No. 66.) Kuntumalla's current counsel, John Coyle, entered his appearance on December 31, 2024. (*See* ECF No. 71.) On February 3, 2025, Kuntumalla filed an opposition to BMS's Motion to Dismiss and a Cross-Motion to Further Amend the Complaint. (*See* ECF Nos. 78, 78-2.)

On March 4, 2025, BMS filed an opposition to Kuntumalla's Cross-Motion. (*See* ECF No. 81-2.) On May 20, 2025, Kuntumalla's former attorney, Robert Mabee, Esq., died. (*See* ECF No. 106-1, at 4.) On June 19, 2025, Kuntumalla filed a Motion for Leave to Further Amend the complaint, seeking to add nine additional plaintiffs her prior counsel, Robert Mabee, Esq., represented before his death. (*See* ECF No. 96.)

On June 24, 2025, this Court administratively terminated BMS's Motion to Dismiss and Kuntumalla's Cross-Motion to Amend, without prejudice to the parties' rights to renew the motions. (*See* ECF No. 97.) The Court then made BMS's renewed Motion to Dismiss due August 8, 2025. (ECF No. 102.) This Cross-Motion followed. (*See* ECF No. 106.)

13

1.    Rule 16

The Court will assess the Rule 16 standard first.

Rule 16 requires the Court to enter a scheduling order that, amongst other things, "limit[s] the time to join other parties [or] amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A). That scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Thus, when a litigant "moves to amend or add a party after the deadline in a district court's scheduling order has passed," Rule 16's "good cause" standard applies. *Premier Comp Sols., LLC*, 970 F.3d at 319; *Sabatino v. Union Twp.*, Civ. No. 11-1656, 2013 WL 1622306, at *3 (D.N.J. Apr. 15, 2013).

The good cause inquiry "focuses on the moving party's burden to show due diligence." *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). Whether a party has demonstrated due diligence primarily turns on whether they "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *McDowell v. City of Elizabeth*, Civ. No. 23-21415, 2025 WL 1379259, at *2 (D.N.J. May 13, 2025) (quoting *Sabatino*, 2013 WL 1622306, at *4) (internal quotation marks omitted). "The most common basis for finding a lack of good cause" under Rule 16 "is the party's knowledge of the potential claim before the deadline to amend has passed." *Kennedy v. City of Newark*, Civ. No. 10-1405, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011); *see also Dimensional Commc'ns Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005). Ultimately, however, "[t]he Court has discretion in determining what kind of showing the moving party must make in order to satisfy" Rule 16's "good cause requirement." *Rx ReLeaf LLC v. Relief TMS LLC*, Civ. No. 23-3551, 2024 WL 4894768, at *3 (D.N.J. Nov. 26, 2024).

The Court has not yet entered a scheduling order in this matter. Therefore, Rule 16's good cause standard does not apply here.

14

2.      Rule 15

Because Rule 16 does not apply, the Court turns to its Rule 15 analysis.

The Supreme Court has stated:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given[.]"

*Foman*, 371 U.S. at 182.

As to Rule 15, Defendant argues that Plaintiff's Cross-Motion should be denied on the basis of: (1) Kuntumalla's undue delay; and (2) the futility of the proposed amendment. (Defendant's Reply Br. at 9–19.)  Only these factors will be discussed herein.

a)      Undue Delay

Defendant first argues that Plaintiff unduly delayed in bringing the Cross-Motion because she waited to amend the complaint and lacks good cause.  (*Id.* at 10.)

Although delay alone does not justify denying a motion to amend, "[a] motion for leave to amend a pleading should be denied when the delay is undue." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  Case law provides that "[t]here is no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue.'" *Ford Motor Co. v. Edgewood Props., Inc.*, Civ. No. 06-1278, 2010 WL 5151605, at *5 (D.N.J. Dec. 10, 2010) (citing *Coulson v. Town of Kearny*, Civ. No. 07-5893, 2010 WL 331347, at *3 (D.N.J. Jan. 19, 2010)).

Delay becomes undue "when a movant has had previous opportunities to amend a complaint." *USX Corp. v. Barnhart*, 395 F.3d 161, 167–68 (3d Cir. 2004) (citing *Cureton*, 252 F.3d at 273).  In determining whether a motion to amend should be denied due to undue delay,

15

courts focus on "the plaintiffs' motives for not amending their complaint to assert [the proposed claim] earlier." *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). Courts also consider "whether new information came to light or was available earlier to the moving party." *Ford Motor Co. v. Edgewood Properties, Inc.*, Civ. No. 06-1278, 2011 WL 1599609, at *3 (D.N.J. Apr. 27, 2011) (citing *In re Adams Golfing Securities Litigation*, 381 F.3d 267, 280 (3d Cir. 2004)). Undue prejudice exists where the non-moving party is "unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the [moving party] been timely." *Heyl & Patterson Int'l, Inc. v. F.D. Ric Housing, Inc.*, 663 F.2d 419, 426 (D.N.J. 1981).

In support of her Cross-Motion, Kuntumalla emphasizes the timing of her former counsel's death. (*See* Cross-Motion Br., at 5–7.) Robert Mabee, Kuntumalla's former counsel, passed away in May 2025 "after a long serious illness and hospitalization that impacted his ability to represent Plaintiff[.]" (*Id.* at 5.) Note, though, that Mabee was not the only lawyer representing Kuntumalla. As Plaintiff explains, Mabee had retained Kuntumalla's current counsel as "local counsel" in this matter. (*Id.*)

Although the Court must liberally grant applications to amend, even the most reasonably liberal view of Plaintiff's application compels the conclusion that her requests to reopen the matter and amend her complaint are untimely. The original Complaint was filed in November 2022— more than three years ago. (*See* ECF No. 1.) In August 2024, this Court dismissed all but one of Plaintiff's claims and granted her 30 days to file an amended complaint. (*See* ECF No. 47.) Plaintiff missed that deadline and did not request an extension. When Plaintiff initially filed her Cross-Motion, she only sought to amend one paragraph of her FAC. (*See* ECF No. 78-2 at 4 ("To be clear, Plaintiff Kuntumalla seeks to change the allegations in Paragraph 16 only.").) Plaintiff only sought to add the proposed new plaintiffs in June 2025. (*See* ECF No. 106-1.)

16

Plaintiff did not raise the issue of her prior lead counsel's illness or passing with this Court, waiting almost ten months to bring Mabee's condition to the Court's attention.[8]  Additionally and most critically, Plaintiff was not solely represented by Mabee.  Local counsel represented her throughout this matter's pendency—and the once local counsel now serves as her lead counsel. Presumably, local counsel was aware of Mabee's illness.  They should have brought Mabee's illness and death to the Court's attention much earlier than June 2025.

Even if local counsel had not been aware of Mabee's illness until May 2025, they were— or should have been—aware of the September 2024 deadline for Plaintiff to file an amended complaint.  Instead of communicating to the Court any issues at the time, Plaintiff and her local counsel merely watched the deadline come and go.  The Court is therefore unpersuaded by Plaintiff's excuses for the missed deadline to amend the complaint.

b)    Futility

Finally, Defendant argues that Plaintiff's Proposed Third Amended Complaint ("PTAC") is futile.  (Defendant's Reply Br., at 14.)  In determining whether a proposed amendment is futile, the Court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted).  An amended complaint is futile if, as amended, it "would fail to state a claim upon which relief could be granted." *Id.*  The Court "determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to [the moving party]." *Great W. Mining & Min. Co.*, 615

---

[8] Note that, in that same period, this matter's docket was not inactive.  On the contrary, Mabee himself filed three letters.  (*See* ECF 57, 67, 69.)  This Court only received notice that Mabee had "returned to work after a surgical procedure" in Coyle's Declaration filed with Plaintiff's Cross-Motion to Amend.  (ECF No. 96-1 ¶ 11.)  In that same Declaration, Coyle indicated that "[o]n or around May 13, 2025, [he] received a telephone call from Mr. Mabee's wife . . . who shared with [him] that Mr. Mabee had suffered from congestive heart failure, was in hospice care, and would not be continuing his legal practice."  (*Id.* ¶ 14.)  Thereafter, seven days later, Mrs. Mabee called Coyle to inform him that Mr. Mabee had passed away.  (*Id.* ¶ 21.)  This Declaration was not filed with the Court until June 19, 2025—more than one month after Coyle was informed that Mabee was in hospice and would not be continuing his practice.

F.3d at 175. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

As previously discussed, Kuntumalla cannot amend her ADA claim, as she missed the 90-day window to file her claim. (*See* supra.) Furthermore, through the PTAC, Kuntumalla attempts to revive claims that this Court previously dismissed in August 2024. (*See* ECF No. 47.) Specifically, Kuntumalla seeks to amend her Title VII and New Jersey Law Against Discrimination ("NJLAD") claims for failure to accommodate, wrongful termination, and her request for declaratory judgment. (*See* ECF Nos. 46, 47.)

Defendant asserts that, because Kuntumalla failed to file an amended complaint within 30 days of the Court's Order (ECF No. 47), she effectively forfeited her rights to reassert those claims. (Defendant's Reply Br. at 17.) Not so. However, Plaintiff has not offered a valid reason for failing to timely amend her dismissed claims.[9] Granting Plaintiff leave to file the PTAC to amend her ADA claim, Title VII, and NJLAD claims would be futile.

### 3. Similarly Situated Class

Finally, Kuntumalla seeks to add nine proposed new plaintiffs to this action. Defendant argues that this amendment should be denied, as: (1) the attempt to add the proposed new plaintiffs comes after nearly three years of litigation; and (2) their claims are time-barred. (*See* Defendant's Reply Br. at 19–20.)

Each proposed new plaintiff alleges that Defendant terminated their employment at some point in late 2021 or early 2022. Because Kuntumalla sought leave to add the proposed new plaintiffs in June 2025, the NJLAD's two-year statute of limitations has long since expired. *See*

---

[9] Note that Plaintiff's current counsel conceded that an amended pleading could have been filed within the Court's 30-day deadline, but "for reasons that will never be known, [Mabee] did not do so." (*See* ECF No. 106-1, at 6.)

18

*Jackson v. Chubb Corp.*, 45 Fed. Appx. 163, 165 (3d Cir. 2002) ("The Supreme Court of New Jersey has clearly held . . . that a two-year statute of limitations applies to all claims under the NJLAD[.]") (citing *Montells v. Haynes*, 133 N.J. 282, 298 (1993)).

Additionally, although Plaintiff does not include the dates that the proposed new plaintiffs received their NRTSs from the EEOC, none of the proposed new plaintiffs alleged that they received their NRTSs less than 90 days before Plaintiff sought leave to file the PTAC. Thus, the proposed new plaintiffs fail to state a Title VII and ADA claim.

Not only are the proposed new plaintiffs' claims untimely, but their claims were also not tolled. Plaintiff nonetheless believes that the proposed new plaintiffs' claims were indefinitely tolled because they were members of the "unnamed class" in this matter. (*See* ECF No. 106-2, ¶¶ 115, 123, 131, 139, 147, 153, 161, 176, 184.)

In support of her argument, Plaintiff references *American Pipe & Construction Company v. Utah*, 414 U.S. 538 (1974). In *American Pipe & Construction Company*, the Supreme Court held that the filing of a putative class action complaint tolls the applicable statute of limitations as to the individual claims of absent class members. *Id.* at 553–54. In that case, less than two weeks before the applicable statute of limitations expired, the state of Utah filed a putative class action antitrust lawsuit on behalf of several public entities. The District Court denied class certification due to insufficient numerosity under Rule 23. Thereafter, several putative class members sought to intervene. The Supreme Court affirmed, stating that "[t]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554. Specifically, the Supreme Court explained that a plaintiff's statute of limitations is tolled when: (1) a formal Rule 23 class action is properly commenced; (2) the court makes a formal determination denying

class certification; (3) the denial is based on technical difficulties rather than substantive issues; and (4) putative class members make timely motions to intervene after certification is denied. *Id.* at 539.

Simply stated: this action is not a class action. Not once prior to the filing of the PTAC did Plaintiff indicate that she intended for this matter to be a class action. Kuntumalla's counsel did not indicate that this matter is a Rule 23 class action in the Civil Cover Sheet attached to the original Complaint. (*See* ECF No. 1-1.) Nothing in the substance of the Complaint or the FAC indicates a proposed class, a request to certify a proposed class, or even references Rule 23. This Court has never treated this matter like a class action.

Plaintiff argues that the inclusion of "and all similarly situated individuals" in the caption of the Complaint and FAC indicate that Plaintiff intended this action to be a class action. (*See* Cross-Motion Br. at 5.) However, inclusion of this language is not enough to turn this matter into a class action like Plaintiff requests. In fact, the Complaint and FAC indicate that "[m]any other employees . . . *will be joined* in this action." (*See* Compl., FAC ¶ 24 (emphasis added).) This language, paired with the lack of a proposed class, leads the Court to infer that Mabee was attempting to use the caption as a placeholder for *individual* plaintiffs—not an entire class.

Because no motion for class certification was ever filed, no Rule 23 analysis was ever conducted, no formal denial of class status occurred, and the case proceeded on Plaintiff's individual claims,[10] *American Pipe* tolling does not apply here. Kuntumalla cannot "piggyback" the proposed new plaintiffs' claims onto her own.[11]

---

[10] The five other plaintiffs who initially filed the Complaint alongside Kuntumalla were ordered to separate arbitrations.

[11] Even if Plaintiff had not delayed in seeking leave to add the proposed new plaintiffs' claims to this matter, and even if the proposed new plaintiffs' claims were not time-barred, the proposed new plaintiffs' claims are futile. The proposed claims fail for the same reason that Kuntumalla's claims failed. Under the ADA and NJLAD, a plaintiff must allege that he: (1) has a disability; (2) is otherwise qualified to perform the essential functions of his job, with or without a reasonable accommodation; and (3) was terminated or otherwise prevented from performing the job.

## C.    MOTION FOR SANCTIONS

Finally, BMS's Motion for Sanctions under Rule 11 raises certain factual issues that will require the Court to conduct an in-person hearing to consider live testimony from Plaintiff Kuntumalla regarding her Notice of Right to Sue from the EEOC.  Also, to the extent Plaintiff wishes to challenge the authenticity and/or significance of the EEOC access records supplied by BMS as part of its motion, the parties shall confer and advise the Court whether BMS will present a witness to testify regarding that evidence at the in-person hearing.

---

*McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 414 (3d Cir. 2017).  None of the proposed new plaintiffs identify any disability they suffer from.  Only one proposed plaintiff alleges that they submitted a medical accommodation request to BMS—Jennifer Jiang.  Jiang, however, alleges only that she suffers from eczema "triggered by the flu shot."  (PTAC ¶ 150.)  Jiang does not indicate how the condition impairs any major life activity.  *See Dean v. Westchester Cnty. P.R.C.*, 309 F. Supp. 2d 587 (2004) (dismissing plaintiff's amended complaint because plaintiff failed to specify how condition impaired a major life activity).  This deficiency cannot be cured by a conclusory statement that her eczema "affect[ed] her major life activities and major bodily functions."  (*See* ECF No. 106-2, at ¶ 150.)  "[N]aked assertion[s] devoid of further factual enhancement" are insufficient to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In light of these deficiencies, it is clear that Kuntumalla's proposed PTAC would prove futile in light of Rule 12(b)(6).

21

## V.      **CONCLUSION**

For the reasons stated above, the Court will **GRANT** Defendant's Motion to Dismiss Plaintiff Kuntumalla's claims and **DENY** Plaintiff's Cross-Motion to Amend.  Further, the Court reiterates that Plaintiff Lynda Buvel, Joy M. Corson, Dan Kalie, Jennifer Rina McDermott, and Steven Stryker's claims continue to be stayed pending arbitration.  The parties will be **ORDERED** to contact the relevant arbitration body and confirm the arbitration status of the claims filed by Plaintiffs Buvel, Corson, Kalie, McDermott, and Stryker.  The parties will be **ORDERED** to file a status update as to those claims on the docket.  The Court will also order an in-person hearing to address the pending Motion for Sanctions.  An appropriate Order will follow.


Date: March 30, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**